UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORMAN GAMBREL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cv-00503-TWP-MJD ) |
| INDIANA DEPARTMENT OF CORRECTIONS, PLAINFIELD CORRECTIONAL FACILITY, SUPERINTENDENT STAN KNIGHT, Individually and in his official capacity, CORRECTIONAL OFFICER CROW, and CORRECTIONAL OFFICER JOHN DOE 1-10, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on a Motion for Partial Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Indiana Department of Correction ("IDOC"), Plainfield Correctional Facility ("PCF"), Superintendent Stan Knight ("Superintendent Knight"), and Correctional Officer Crowe ("Officer Crowe") (collectively, "Defendants") (Filing No. 62). While an inmate at PCF, Plaintiff Norman Gambrel ("Gambrel") was violently attacked by a fellow inmate and injured as a result of the attack. Gambrel filed this action against the Defendants as well as Correctional Officer John Doe 1–10 for violating his Eighth Amendment rights by failing to protect him, failing to properly train officers, failing to properly assign officers, and having a deliberate indifference toward his safety. Gambrel also asserted related state law tort claims. The Defendants filed their Motion for Partial Summary Judgment, asserting various arguments that they are entitled to judgment as a matter of law on Gambrel's federal claims. For the following reasons, the Court **grants** the Defendants' Motion for Partial Summary Judgment.

# I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Gambrel as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

IDOC is an Indiana governmental agency, and PCF is a medium-security IDOC correctional facility located in Plainfield, Indiana (Filing No. 1 at 3). Superintendent Knight operates, manages, directs, and controls PCF. *Id.* at 2. Officer Crowe is employed by IDOC as a correctional officer at PCF. *Id.* Gambrel was incarcerated as an inmate at PCF on February 20, 2015, the date of the assault. *Id.* at 2–3.

Gambrel worked in the PEN Products area at PCF and had been employed there for approximately three months prior to the assault. The PEN Products area is a distribution warehouse from which all IDOC facilities get their commissary. Gambrel's job in the PEN Products area was to work as a "picker," which consisted of filling individual commissary orders by taking an order form, filling a box with the items listed on the order form (such as candy bars, chips, soup), and placing the box and the order form on a conveyor belt. He would then take another order form and box and repeat the steps for that order. His shift was from 7:00 a.m. to 3:30 p.m., Monday through Friday (Filing No. 63-1 at 11–16).

Gambrel was familiar with his assailant, Raymond Kestner ("Kestner"), prior to the assault. They lived in the same dorm. Kestner approached Gambrel and accused him of being a tattletale or snitch. Gambrel told a correctional officer—he believes it was Officer Crowe—that he needed to move to a different dorm because he feared Kestner was going to beat him up. Gambrel was immediately moved to another dorm. Prior to the assault, Gambrel did not have any other run-ins

with Kestner or even see Kestner again after being moved into another dorm. Gambrel began working in the PEN Products area approximately one month after being moved to another dorm and away from Kestner. *Id.* at 17–20.

Gambrel had been working in the PEN Products area for approximately three months prior to the assault. On the morning of the assault, he woke up around 5:00 a.m., ate breakfast, and then went to work. This was his normal routine for the previous three months, and there was nothing unusual about how his morning started. *Id.* at 12, 16–17.

Gambrel did not know that Kestner had started working in the PEN Products area until he saw Kestner on the day of the assault. He had not seen Kestner since he had been moved out of the dorm nor had he talked to Kestner. Around 8:30 a.m., as Gambrel was filling orders, Kestner approached him, spit on him, and continued walking by. At some point, Kestner also kicked the box that Gambrel was working on filling. Gambrel left his work station to get a napkin and wipe the spit off. He also told a correctional Officer Yousefi what had just happened and stated that Officer Yousefi needed to keep an eye on them. *Id.* at 17, 21–24, 26; Filing No. 68-1 at 2.

Gambrel returned to the picking line and continued working. (Filing No. 63-1 at 25). Officer Yousefi informed Officer Crowe—who was the senior officer on duty and in charge of the PEN Products picking area—that Gambrel was being threatened by Kestner. Officer Crowe asked Officer Yousefi to identify who was the threatening offender and who was the victim, which Officer Yousefi did. Officer Crowe directed Officer Yousefi to remove Kestner from the area and into the hallway. Officer Crowe remained in the picking area, standing by the door. Officer Yousefi began escorting Kestner toward the door to the hallway. He was not touching or physically restraining Kestner because he had not observed anything that would require him to restrain Kestner, and Officer Crowe told him that he would remove Gambrel from the picking area.

3

Yet, Officer Crowe did not remove Gambrel from the area. Instead, as Officer Yousefi and Kestner were approaching the door, Gambrel finished filling a box and was about to start working on a new order form, when he found himself in the direct path of Kestner and Officer Yousefi ([Filing No. 68-1 at 2](Filing No. 68-1 at 2)–3). Kestner came up behind Gambrel and punched him four or five times in the jaw ([Filing No. 63-1 at 25](Filing No. 63-1 at 25)). After Kestner began attacking Gambrel, Officer Yousefi intervened and restrained Kestner. Officer Yousefi noticed that Officer Crowe stood by without intervening ([Filing No. 68-1 at 3](Filing No. 68-1 at 3)). As a result of the attack, Gambrel suffered multiple fractures of facial bones, including broken top and bottom jaws, a shattered sinus cavity, and a broken eye socket. He was placed in medical segregation following the assault ([Filing No. 68-2 at 1](Filing No. 68-2 at 1)–2).

Gambrel has never met or spoken to Superintendent Knight. Superintendent Knight had no personal involvement in the events of February 20, 2015 ([Filing No. 63-1 at 35](Filing No. 63-1 at 35)–37). Gambrel is no longer incarcerated at PCF, having been released to parole. *Id.* at 33.

On February 16, 2017, Gambrel filed a Complaint against IDOC, PCF, Superintendent Knight, Officer Crowe, and Correctional Officer John Doe 1–10 ([Filing No. 1](Filing No. 1)). In his Complaint, Gambrel asserts Count I against Officer Crowe and Correctional Officer John Doe 1–10 for deliberate indifference under the Eighth Amendment pursuant to 42 U.S.C. §§ 1983, 1985. Count II is brought against IDOC, PCF, and Superintendent Knight for their failure to train. Count III is brought against IDOC, PCF, and Superintendent Knight for their failure to properly assign staff. Count IV is brought against all Defendants for conspiracy to violate constitutional rights afforded by the Eighth Amendment. Counts V and VI are brought against Officer Crowe and Correctional Officer John Doe 1–10 under Indiana tort law for negligence and intentional infliction of emotional distress. *Id.* at 4–10. The Defendants filed their Motion for Partial Summary Judgment, asserting that they are entitled to judgment as a matter of law on Gambrel's federal claims, and the Court

should decline to exercise its supplemental jurisdiction over Gambrel's pendant state law claims and dismiss those claims without prejudice.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation

5

marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

The Defendants argue they are entitled to summary judgment, asserting,

> …Gambrel's federal claims fail and should be dismissed. Under 7th Circuit precedent, the claims against "John Doe" defendants cannot be maintained. The Eleventh Amendment bars Section 1983 claims against IDOC and its employees in their official capacities. IDOC and its employees, Knight and Crowe, are not "person[s]" subject to suit under Section 1983. Under Gambrel's facts, his deliberate indifference/failure to protect claim fails against Officer Crowe. Gambrel's *Monell* claims fail against Stanley Knight, the IDOC, and PCF, because *Monell* does not apply to states, state agencies, or state officials. Gambrel's civil conspiracy claim fails because he cannot establish an underlying constitutional violation. Finally, Officer Crowe is entitled to qualified immunity. Summary judgment is proper and warranted as to all of these claims.
>
> The only claims remaining are Gambrel's state law tort claims for damages. The Court should decline to extend its supplemental jurisdiction to [] Gambrel's pendant state law claims and dismiss them, without prejudice.

(Filing No. 63 at 2–3.)

In response to the Defendants' Motion, Gambrel explains,

> As to the specific arguments of Defendants as set forth in their Brief on the matter, [Gambrel] would stipulate as follows:
>
> 1. The claims against the John Doe defendants, IDOC and PCF should be dismissed as to any claims under federal law.
>
> 2. The claims against Stanley Knight and Officer Crowe in their official capacities should be dismissed as to any claims under federal law.
>
> 3. Counts II, III and IV should be dismissed.

(Filing No. 68 at 3–4.)

With controlling case law in favor of the Defendants and no genuine issues as to any material facts, and considering Gambrel's "stipulation" of dismissal, summary judgment is **granted** in favor of all Defendants (including the unrepresented "John Doe" defendants) on Counts II, III, and IV of Gambrel's Complaint, as well as on Count I against the "John Doe" defendants. Thus, the only claims remaining for consideration are Count I for deliberate indifference under the Eighth Amendment against Officer Crowe in his individual capacity and the state law tort claims for negligence and intentional infliction of emotional distress under Counts V and VI.

A. **Deliberate Indifference Claim Against Officer Crowe**

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (internal citations and punctuation omitted). To establish an Eighth Amendment failure to protect claim, a plaintiff must show (1) that he suffered an objectively "sufficiently serious" injury, and (2) that he was "incarcerated under conditions posing a substantial risk of serious harm" to which the prison official acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Eighth Amendment liability cannot attach "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

> To prove deliberate indifference, [a plaintiff] need[s] to show that the defendants knew of a substantial risk of serious injury to him and failed to protect him from that danger. But as the court noted, a general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm.

*Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (internal citations omitted).

The United States Supreme Court has "distinguished deliberate indifference . . . from negligence . . . , holding that . . . Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (internal citations and punctuation omitted). "[C]onduct that simply amounts to mere negligence or inadvertence is insufficient to justify the imposition of liability." *Pinkston*, 440 F.3d at 889 (internal citations and quotation marks omitted). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

Gambrel contends that Officer Crowe is not entitled to summary judgment on the deliberate indifference claim because Officer Crowe knew that Kestner had threatened Gambrel, Officer Yousefi communicated to Officer Crowe that Kestner had spit on Gambrel, Officer Yousefi identified both Gambrel and Kestner for Officer Crowe, and it was foreseeable that the attack would happen. Gambrel argues it was unreasonable that Officer Crowe did not first escort him away from the PEN Products area or at least stand between him and Kestner while Officer Yousefi escorted Kestner toward the door and hallway. Instead, when the attacked occurred, Officer Crowe stood by without intervening, leaving Officer Yousefi alone to stop the attack. Gambrel asserts that Officer Crowe's failure to take these reasonable steps resulted in the attack on Gambrel and was in deliberate indifference to a substantial risk of serious harm. Gambrel argues,

> While Officer Crowe did undertake measures to protect [Gambrel] by having Kestner removed from the facility, his chosen means of effectuating this maneuver placed [Gambrel] directly in the path of Kestner. . . . Not removing [Gambrel] from the path of Kestner was an act of deliberate indifference as to the safety and health of [Gambrel] and reckless as defined in criminal law.

8

([Filing No. 68 at 11](#).)

The Defendants reply that "Gambrel's response and [Officer] Yousefi's affidavit make it crystal clear that his claim against Crowe is *at best* a negligence claim dressed up as an Eight[h] Amendment claim." ([Filing No. 75 at 2](#) (emphasis in original).) The Defendants argue that Officer Crowe was not made aware of any specific threat facing Gambrel, but when Officer Crowe was informed of a general threat posed by Kestner, he directed Officer Yousefi to remove Kestner from the PEN Products area and take him into the hallway. Under the standard set by *Farmer*, Officer Crowe cannot be liable if he responded reasonably to the risk even if the harm ultimately was not averted, and Officer Crowe's directive to Officer Yousefi to remove Kestner from the PEN Products area qualifies under *Farmer* as a reasonable response.

The Defendants further argue that Officer Yousefi's sworn statement indicates that he did not physically restrain Kestner as he escorted Kestner out of the area because he did not observe anything that would have required him to restrain Kestner. This fact, the Defendants assert, shows that no one was aware that violence was imminent at that point in time, and thus, they could not have been deliberately indifferent to a substantial risk of serious harm. Additionally, there is no evidence that Officer Crowe prescribed a particular route for Officer Yousefi to take when escorting Kestner out of the area. Instead, Officer Yousefi made the decision to walk Kestner directly into the path of Gambrel as Gambrel was filling orders. Defendants argue, "[w]hile that retrospectively unwise decision was perhaps negligence on [Officer] Yousefi's part (although that too is doubtful, since he admits he did not observe any actions requiring restraint of Kestner), it is definitely not chargeable to Crowe as being an 8th Amendment violation." ([Filing No. 75 at 4](#).)

In the context of Eighth Amendment failure-to-protect claims, the case law is well-settled that "prison officials who actually knew of a substantial risk to inmate health or safety may be

found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted," *Farmer*, 511 U.S. at 844, and a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The evidence viewed in the light most favorable to Gambrel indicates that Officer Crowe was at most negligent, not that he was deliberately indifferent to a substantial risk of serious harm. The facts are that, when Officer Crowe became aware of the threat posed by Kestner to Gambrel while the two were working in the PEN Products area, Officer Crowe directed Officer Yousefi to escort Kestner out of the area. This was a reasonable response, taking reasonable measures to abate the threat posed by Kestner.

Officer Yousefi did not physically restrain Kestner as he escorted Kestner out of the area, and Officer Yousefi determined the path that they walked toward the door. Gambrel was moving about freely in the area as he worked on filling orders. Officer Yousefi was near Kestner when the attack happened and was able to restrain Kestner, thereby making it unnecessary for Officer Crowe to physically intervene. While in hindsight it would have been wise for Officer Crowe to stand by Gambrel (or remove him from the area) until Kestner was removed from the area, Officer Crowe's actions and inaction do not amount to a deliberate indifference to a substantial risk of serious harm. Officer Crowe took reasonable measures to abate the threat posed by Kestner, though unfortunately the harm ultimately was not averted. Summary judgment in favor of Officer Crowe is appropriate on the deliberate indifference claim.

**B.** **State Law Claims**

Concerning the two state law tort claims, the Defendants assert,

> Under 28 U.S.C. § 1367, "a district court 'may decline to exercise supplemental jurisdiction' over state-law claims if the court 'has dismissed all claims over which it has original jurisdiction.'" *John C. & Maureen G. Osborne Revocable Fam. Tr. v. Town of Long Beach, Indiana*, 2018 WL 1471903, at *12

> (N.D. Ind. Mar. 26, 2018) (citing 28 U.S.C. § 1367(c)(3)). Though the decision is discretionary, "when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Id.* (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012)). Indeed, though the presumption [is] rebuttable, "'it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (citing *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)). Courts should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity,'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997), but, importantly, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial," *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).
>
> As outlined above, summary judgment is proper as to all federal claims asserted by Gambrel against the defendants in this lawsuit. All that remains are Counts V and VI – claims against the defendants grounded in Indiana tort law. These claims should be dismissed and this lawsuit should be closed.

([Filing No. 63 at 17](#)–18.)

Gambrel responds,

> For the reasons set forth above, the Court should not grant the Defendants' Motion for Partial Summary Judgment as to Count I as to Officer Crowe in his individual capacity and therefore, given that the federal claim should continue, this Court should maintain ancillary jurisdiction over the state law claims against the Defendants.

([Filing No. 68 at 12](#)–13.)

In light of the Court's issuance of summary judgment in favor of the Defendants on all federal claims, and because Gambrel has offered no argument against the well-established presumption of the Seventh Circuit to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed, the Court declines to exercise its supplemental jurisdiction over Gambrel's two state law tort claims. Thus, Counts V and VI of Gambrel's Complaint are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Partial Summary Judgment (Filing No. 62) is **GRANTED**. The federal claims asserted against the Defendants are **dismissed with prejudice,** and the state law tort claims are **dismissed without prejudice.** Final judgment will issue under separate order.

**SO ORDERED.**

Date: 6/11/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Harold Curtis Johnson
BROWN DEPREZ & JOHNSON
curtjohnson@shelbylaw.com

John Joseph Morse
MORSE & BICKEL, P.C.
morse@morsebickel.com

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL'S OFFICE
jonathan.nagy@atg.in.gov

Mollie Ann Slinker
INDIANA ATTORNEY GENERAL'S OFFICE
mollie.slinker@atg.in.gov